PRESENT:  Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Lacy, S.J.

MARVIN HINES

v.  Record No. 151066

COMMONWEALTH OF VIRGINIA

OPINION BY SENIOR JUSTICE
ELIZABETH B. LACY
October 27, 2016

FROM THE COURT OF APPEALS OF VIRGINIA

Marvin Hines was indicted for first degree murder of Wayne Hudson in violation of Code § 18.2-32 and use of a firearm in the commission of first degree murder in violation of Code § 18.2-53.1.  Hines claimed he shot Hudson in self-defense.  Following a bench trial, the trial court found Hines guilty of voluntary manslaughter.  After granting the Commonwealth's motion to amend the indictment, the trial court also found Hines guilty of a violation of Code § 18.2-53, shooting another person in the commission of a felony.  The Court of Appeals denied Hines' petition for appeal.  *Hines v. Commonwealth,* Record No. 1496-14-1 (Feb. 12, 2015) (unpublished) (per curiam).

In this appeal, Hines asks us to reverse the Court of Appeals' judgment denying his petition for appeal and holding that Hines did not shoot Hudson in self-defense, and to vacate his conviction of voluntary manslaughter.  He also seeks reversal of the Court of Appeals' determination that the trial court did not err when it allowed amendment of the indictment to substitute a charge of violating Code § 18.2-53 for the original charge of violating Code § 18.2-53.1.

FACTS AND PROCEEDINGS

Following a two-day ore tenus hearing, the trial court took the matter under advisement and subsequently issued a letter opinion reciting the following facts:

Victim Wayne Hudson had been the live-in boyfriend of Defendant's sister, Ruby Strange, for approximately 15 years. He lived on the same street as Defendant, and the two of them spent much time in each other's company. When Defendant shot Mr. Hudson in the early hours of May 30, 201[1], Mr. Hudson had been drinking since the afternoon of the previous day and was intoxicated. He had become extremely belligerent and argumentative, insisting that Mrs. Hines and neighbor Matt Thomas leave him alone and leave his girlfriend alone. Mr. Hudson's belligerent behavior caused alarm to Mrs. Hines. Mr. Thomas tried without success to get Mr. Hudson to calm down.

In the heat of this out-of-control temper tantrum happening in his own house, Defendant confronted Mr. Hudson. Defendant testified that he saw that Mr. Hudson had a gun in his hand. The Commonwealth hotly contests Defendant's testimony that the victim was armed and urges the Court to find otherwise. Defendant testified that upon his realization that this raging intoxicated man had a gun in his hand, he immediately retreated to an adjacent room, got a weapon of his own, and returned to the room. He testified that he planned to confront Mr. Hudson with his own weapon on the belief that Mr. Hudson would put his weapon down and would calm down once he realized that Defendant was armed. He testified to his concern for his wife and sister. Mr. Thomas saw Defendant pass by in the hallway on the way to rejoin Mr. Hudson, with the gun in his hand. Defendant fired the gun approximately 5 times thereafter, causing three bullet wounds to Mr. Hudson that proved fatal. Mr. Thomas testified that he did not see Mr. Hudson with a gun. He admitted that he told the police on the day of the shooting that he thought Mr. Hudson had a gun.

In its letter opinion, the trial court rejected the Commonwealth's argument that Hudson did not have a gun, finding that "Defendant's testimony was credible," and recited Hines' statements to law enforcement officials at the time of the shooting: that Hudson had a gun and had "cocked" the gun and pointed it at Hines, triggering Hines' reaction to shoot in self-defense. The trial court concluded that the "most reasonable interpretation of the physical and testimonial evidence [was] that Mr. Hudson did have a gun."

The trial court concluded as a matter of law, however, that Hines did not carry his burden of proving his claim of self-defense because when he went to another room to retrieve his own gun, he "removed himself from [the] danger" presented by Mr. Hudson's possession of a gun. The trial court explained:

> Defendant had the opportunity to retreat and did in fact retreat. He cannot assert any privilege to return to the room with a weapon of his own and trigger a shoot-out with . . . Mr. Hudson.

> . . . .

> Defendant was alarmed by the victim's belligerent conduct and became more alarmed and afraid when he perceived the gun. He should have retreated to safety but instead got a gun of his own, and out of fear and upon impulse, without conscious reflection or malice, he shot the victim.

The trial court found Hines guilty of voluntary manslaughter.

Hines filed a motion to vacate his conviction. He challenged the court's conclusion of law that "he should have retreated to safety," arguing a homeowner has no duty to retreat when attacked in his own home. Acknowledging that "a homeowner has no obligation to retreat 'if assaulted in his own dwelling.' *Fortune v. Commonwealth,* 133 Va. 669, 687, 112 S.E. 861, 867 (1922)'" the trial court in an opinion and order denying the defense motion to vacate, dated June 9, 2014, retracted the offending language and clarified its holding to reflect that Hines was not "obliged to retreat" but because Hines could and did safely retreat from the danger posed by Hudson, he "had no reasonable belief that the victim was going to hurt him or his family."

However, the trial court again rejected Hines' claim of self-defense, concluding that Hines did not demonstrate "that he was in reasonable fear of imminent death or injury to himself or his family from the victim, nor had the victim taken an overt step to suggest that he intended imminent deadly action." The trial court refused to vacate its finding that Hines was guilty of voluntary manslaughter. Over Hines' objections, the trial court also granted the Commonwealth's motion to amend the indictment to charge Hines with a violation of Code § 18.2-53, unlawfully shooting another person in the commission of a felony, concluding the amendment did not change the nature and character of the offense.

3

In his appeal to the Court of Appeals, Hines argued that the trial court erred in rejecting his claim of self-defense and convicting him of voluntary manslaughter. He also asserted that the trial court erred in amending the indictment to recite a charge of a violation of Code § 18.2-53. The Court of Appeals denied Hines' petition for appeal. *Hines*, slip op. at 1. Hines filed a timely petition for appeal with this Court, raising the same issues.

DISCUSSION

We first consider Hines' assertion that the Court of Appeals and trial court erred in concluding that the facts did not support Hines' claim that he acted in self-defense. On appellate review, the judgment of the trial court is presumed to be correct and will be reversed only if it is "plainly wrong or without evidence to support it." Code § 8.01-680. Because the trial court's conclusion that Hines did not shoot Hudson in self-defense is contrary to the evidence and not supported by the record, we find that the court's judgment is plainly wrong.

To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim. *McGhee v. Commonwealth*, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978). Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident. *Id.* The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety. *Commonwealth v. Cary*, 271 Va. 87, 99, 623 S.E.2d 906, 912 (2006). Finally, when a party assaults a homeowner in his own home, as in this case, the homeowner has the right to use whatever force necessary to repel the aggressor. *Fortune v. Commonwealth*, 133 Va. 669, 687, 112 S.E. 861, 867 (1922) (recognizing the law derived from the "Defense of the Castle" doctrine provides that "a man is not obliged to retreat if assaulted in

4

his dwelling, but may use such means as are absolutely necessary to repel the assailant . . . even to the taking of life").

In its letter opinion, the trial court determined that Hines was a credible witness, that his testimony "was credible." In its findings of fact, the trial court recited that Hines testified that he went to the other room to retrieve his gun because "he planned to confront Mr. Hudson with his own weapon on the belief that Mr. Hudson would put his weapon down and would calm down once he realized that [Hines] was armed" and that he had "concern" for his sister and wife who remained in the room with Hudson who was brandishing a gun. At trial, Hines repeatedly testified that when he reentered the room with his gun, Hudson pointed his gun at Hines and at that point in time, Hines feared for his life and shot Hudson. The trial court's letter opinion also stated, as a matter of fact, that Mrs. Hines' statement to a 911 operator that Hudson had "pulled a gun on her husband and her husband had shot him . . . confirmed Defendant's account of what happened." This testimony, considered credible and accepted by the trial court, demonstrates that while Hines was concerned for the safety of his family members, his fear of imminent death or bodily injury from Hudson arose when he returned to the room and Hudson pointed a gun at him.

There is nothing in the record to support the trial court's statements in its conclusions of law that Hines returned "to the room with a gun pointed at the victim." As demonstrated above, that statement, along with the trial court's statements that Hines returned "to the room and immediately shot the victim," and that Hines had "no reasonable belief" that Hudson would harm Hines are inconsistent with the trial court's own findings of fact and are not supported by the record. Finally, the record does not support the trial court's conclusion that Hudson had not taken "an overt step" to suggest an immediate threat to Hines' safety. Indeed, the

5

Commonwealth agreed that if Hudson was pointing a gun at Hines that was an act sufficient to establish imminent danger to Hines. Therefore, the trial court's conclusion that Hines failed to establish his claim of self-defense is plainly wrong and not supported by the record.

Finally, we note that the Commonwealth's argument and the trial court's statement that Hines could not claim that he shot Hudson in self-defense because he had the opportunity to remove himself from the threat of danger from Hudson and then armed himself without reasonable fear of serious injury from Hudson not only is inconsistent with the facts as discussed above, it ignores the legal principle that when a party is assaulted in his own home, that party, as a homeowner (or tenant, as the case may be), has the right to use whatever means necessary to repel the aggressor, "even to the taking of life." *Fortune*, 113 Va. at 687, 112 S.E. at 867. In this case, Hudson was brandishing a weapon in Hines' own home, and Hines exercised his right to defend himself, his family, and his home with appropriate force.

In summary, the record in this case demonstrates that Hudson, while in Hines' home, was belligerent, had been drinking and brandished a gun in the presence of Hines, his wife and sister. In an attempt to defuse the situation and protect himself and his family, Hines retrieved his own gun from another room. When reentering the room, Hudson pointed his gun at Hines. Hines, fearing for his life, shot Hudson. These facts support Hines' claim that he shot Hudson in self-defense.

In light of this holding, we need not address Hines' challenge regarding the amendment of the indictment to include a charge of a violation of Code § 18.2-53.

The judgment of the Court of Appeals is reversed and the convictions are vacated.

*Reversed and final judgment.*

6