COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judge O'Brien and Senior Judge Haley
Argued at Richmond, Virginia


DAVID ZANDY LEECH

MEMORANDUM OPINION[*] BY
v.      Record No. 1005-21-2        CHIEF JUDGE MARLA GRAFF DECKER
OCTOBER 4, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Jayne A. Pemberton, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General; Susan Brock Wosk, Assistant Attorney General,
on brief), for appellee.


David Zandy Leech appeals his conviction for brandishing a firearm, in violation of Code

§ 18.2-282. The appellant contends that the trial court erred in finding the evidence sufficient to

support his conviction, arguing that he acted in self-defense. For the following reasons, we affirm

the conviction.

I. BACKGROUND[1]

On December 30, 2020, several packages destined for the appellant's home were mistakenly

delivered to the home of his neighbor, Christopher McCoy. McCoy had taken several packages to

the appellant's home as they arrived, but two additional packages intended for that address were

delivered later to McCoy's home. When the appellant came to McCoy's residence that evening to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In accordance with familiar principles of appellate review, we recite the facts in the
light most favorable to the Commonwealth, as the prevailing party at trial. *See, e.g.*, *Caison v.
Commonwealth*, 52 Va. App. 423, 440 (2008).

retrieve those packages, McCoy, who had recently broken his ankle in three different places, was lying in bed in a downstairs bedroom with the window open.

The appellant stood outside McCoy's open window, yelling at him, and demanding that he look for the packages. McCoy first "nicely" asked the appellant to leave. He repeated the request numerous times, but the appellant continued yelling for McCoy to look for his packages. After McCoy told the appellant to check his mailbox for any packages, the appellant retrieved a package with his wife's name on it. Instead of leaving McCoy's property, the appellant returned to the house to show McCoy the package.

As the appellant stood in the driveway, McCoy came outside "in [his] boxers," accompanied by his fifteen-year-old son.[2] McCoy was "hobbling a little bit" due to his ankle injury. He again asked the appellant to leave. When the appellant refused, McCoy told him that he would "punch him in the nose" if he did not leave. The appellant remained in the driveway, yelling at McCoy and "running his mouth." As McCoy approached within one to two feet of the appellant, the appellant dropped the package and reached for his pistol. He pointed the small, black gun at McCoy's face. McCoy jumped back, then he and his son went inside the house and called the police.

Chesterfield County Police Officer D. N'Diaye responded to the call. While investigating the incident, the officer went to the appellant's house to interview him. The appellant told Officer N'Diaye that his wife put the wrong address on a shipping label. He said that when he went to McCoy's home to retrieve the packages, he and McCoy got into a "heated exchange." The appellant said he heard a "gun slide rack" as he was speaking to McCoy through an open window and then McCoy came outside. The appellant told the officer that he drew his firearm and pointed it at McCoy's chest when McCoy approached him and grabbed the package from his hands. The appellant acknowledged that he did not see McCoy carrying a firearm.

---

[2] McCoy testified that he was unarmed at the time.

At trial, the appellant testified in his defense. He said that he went to McCoy's house because McCoy had not responded to his messages about two misdelivered packages. The appellant had a concealed weapons permit and admitted that he carried his firearm with him every day. He said he was carrying his pistol in a holster on his person because he had gone directly from work to McCoy's house. The appellant confirmed that he spoke with McCoy through the window about the packages and McCoy told him to check the mailbox.

The appellant found one package with his wife's name on it in the mailbox and went back to the house to show it to McCoy. According to the appellant, McCoy jumped out of bed, grabbed a firearm off his nightstand, "racked a round" into the chamber, and yelled for the appellant to leave his property. The appellant said that when McCoy came out of his house, he threatened to beat up the appellant if he did not leave. The appellant testified that he knew that McCoy had been convicted once of brandishing a firearm and believed that he could have had a firearm tucked inside his waistband. He watched McCoy's hands but did not see a firearm. The appellant said that McCoy approached him as he walked backwards out of the driveway. His version of the incident was that when McCoy snatched the package out of his hands, he pointed his firearm at McCoy's chest as he told McCoy to "step back and get away . . . go inside." McCoy then started backing away, so the appellant holstered his weapon and left.

During his closing argument in the bench trial, the appellant moved to strike the evidence, asserting that he acted in self-defense. The trial court denied the motion, found the appellant guilty of brandishing a firearm, and sentenced him to twelve months in jail, with twelve months suspended.

## II. ANALYSIS

The appellant argues that the trial court erred in finding the evidence sufficient to support his conviction for brandishing a firearm. He suggests that because he acted in self-defense, he was not guilty of the offense. We review the challenge guided by well-established legal precedent.

"When considering the sufficiency of the evidence, an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams v. Commonwealth*, 71 Va. App. 462, 483 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). This standard requires the Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On appeal, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Secret*, 296 Va. at 228). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016)).

In conducting our analysis, we are mindful that determining witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The fact finder, in this case the trial court, "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). Additionally, "[i]n its role of judging witness credibility, [it] is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). When the trier of fact has resolved credibility issues in favor of the Commonwealth, "those findings will not be disturbed on appeal unless plainly wrong." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

The appellant does not contest that he pointed a firearm at McCoy. Instead, he argues that the trial court erred in convicting him because he drew his weapon in self-defense to deter an imminent threat of violence. Emphasizing McCoy's admission that he intended to punch the appellant in the nose, the appellant asserts that he made a "defensive display of his weapon to repel a violent attack." He contends that he produced his weapon only after McCoy approached "within a foot or two" and, as a result, prevented a physical altercation.

Code § 18.2-282(A) provides that "[i]t shall be unlawful for any person to point, hold or brandish any firearm . . . in such manner as to reasonably induce fear in the mind of another . . . of being shot or injured." The statute, however, does not apply to "any person engaged in excusable or justifiable self-defense." *Id.* The appellant argues that the undisputed evidence shows that he made a "defensive display of his weapon," in self-defense, "to repel a violent attack."

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). To establish self-defense, "a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* "The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.* Additionally, "the amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989). "Whether an accused" meets this threshold "is a question of fact" for the trier of fact. *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ('justifiable self-defense') and self-defense with fault ('excusable self-defense')." *Id.* at 487.

Justifiable self-defense occurs "where a person, without any fault on his part in provoking or bringing on the difficulty," acts under a reasonable fear of death or serious bodily injury. *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019) (quoting *Bell*, 66 Va. App. at 487). The accused may not claim justifiable self-defense if he "'is even slightly at fault' in creating the difficulty" leading to the incident. *Id.* (quoting *Smith*, 17 Va. App. at 71).

Excusable self-defense occurs "where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and [acts] . . . from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Bell*, 66 Va. App. at 487 (quoting *Bailey v.*

- 6 -

*Commonwealth*, 200 Va. 92, 96 (1958)). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Jones*, 71 Va. App. at 94-95 (quoting *Smith*, 17 Va. App. at 71).

Here, the evidence demonstrated that the appellant was at fault in bringing on the interaction with McCoy. First, he entered McCoy's property and yelled at him through the open window, demanding that McCoy, who had a broken ankle, get out of bed to look for the packages. The appellant refused to listen to McCoy's repeated requests to leave McCoy's property and instead continued yelling at him. Viewed in the light most favorable to the Commonwealth, the evidence proves that the appellant was at "fault" in bringing on the difficulty. Therefore, he cannot claim that he acted in justifiable self-defense. *See Hughes*, 39 Va. App. at 464 (holding that the evidence established that the defendant "created the situation" that resulted in his stabbing the victim, thus refuting the defendant's self-defense claim).

Turning to whether the appellant acted in excusable self-defense, the appellant argues that he reasonably responded to McCoy's threat to punch him by displaying his pistol as a deterrent. *See generally Smith*, 17 Va. App. at 69-70 (finding that the defendant acted in excusable self-defense when he retreated from the conflict as far as possible and shot another man, whose cocaine he had stolen, to prevent that man from shooting him). However, the record here shows that after provoking the affray with McCoy, the appellant ignored McCoy's repeated requests that he leave, even after he had retrieved his package. Instead, the appellant stood in McCoy's driveway, "yelling" and "running his mouth." When McCoy said that he would punch the appellant in the nose if he did not leave, the appellant neither retreated nor announced his desire for peace. Instead, he remained on McCoy's property, pulled his gun from its holster, and pointed it at McCoy's chest. Based on the appellant's failure to retreat despite McCoy's repeated requests to

leave the property, his claim that he acted in excusable self-defense necessarily also fails.[3] *See*

*Lynn v. Commonwealth*, 27 Va. App. 336, 350 (1998) (rejecting claim of excusable self-defense

where the defendant "neither abandoned the fight nor retreated"), *aff'd*, 257 Va. 239 (1999).

The trial court, as the fact finder in a bench trial, assessed the credibility of the witnesses and

weighed the evidence. The record, viewed in the light most favorable to the Commonwealth,

establishes that the appellant started the confrontation, continued to provoke McCoy, and refused to

leave despite being told repeatedly to do so. In fact, even after retrieving the package from the

mailbox he did not leave. Once McCoy joined him outside and the argument over the appellant

refusing to leave continued, the appellant drew his weapon and pointed it in McCoy's face. *See*

*Hughes*, 39 Va. App. at 464. This evidence supports the trial court's finding that the appellant did

not act in self-defense in either of its forms.

## III. CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, does not support

the appellant's claim that he brandished his firearm in self-defense. Instead, it contains sufficient

evidence to support the appellant's conviction for brandishing a firearm. Accordingly, we

affirm.

*Affirmed*.

---

[3] We recognize that there was no evidence that McCoy was armed or raised his hands as though he intended to hit the appellant. *See Jones*, 71 Va. App. at 86 ("'[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded,' is insufficient without an overt act." (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977))). Nevertheless, in light of our conclusions that the appellant failed to prove that he retreated as far as he was able to or announced his intention for peace, we do not decide whether the appellant proved that McCoy, by approaching him, made an overt act demonstrating a threat to the appellant's safety. *See, e.g.*, *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (recognizing that appellate courts decide cases on the "best and narrowest grounds"); *see generally Jones*, 71 Va. App. at 88 (affirming first-degree murder conviction and holding that there was no evidence that the victim approached the defendant in a "menacing fashion" when the defendant thought the victim was reaching into his waistband for a weapon).