COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Fulton and Ortiz
Argued at Norfolk, Virginia


MIQUEL SIRMIR JOHNSTON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1761-22-1          CHIEF JUDGE MARLA GRAFF DECKER
                                                         MARCH 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Charles E. Haden for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Miquel Sirmir Johnston appeals his convictions for voluntary manslaughter, assault and

battery of a family member, and unlawfully shooting into an occupied dwelling. *See* Code

§§ 18.2-35, -57.2, -279.  On appeal, he contends that the trial court abused its discretion by

refusing to give one of his proffered jury instructions.  Johnston also challenges the sufficiency

of the evidence to sustain his convictions.  For the following reasons, we affirm the convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

UNPUBLISHED

BACKGROUND[1]

On May 26, 2018, Johnston and his girlfriend, Tytianna Staton-Fuller (Staton-Fuller) had a physical altercation that ultimately led to him fatally shooting her father. A grand jury indicted Johnston for first-degree murder, assault and battery of a family member, maliciously discharging a firearm within an occupied dwelling, and using a firearm while committing murder.

At the ensuing jury trial, several witnesses testified, including Staton-Fuller and Johnston. The two gave fundamentally the same version of events of that day. In May 2018, Staton-Fuller and Johnston were in a romantic relationship and shared an apartment. On the day of the shooting, the couple had an argument that escalated into physical violence. After the initial confrontation, Staton-Fuller called her father, Lawrence Fuller (Fuller), who went to the apartment. When he arrived, Johnston was in the bedroom. Fuller went to the bedroom, where Johnston shot him.

The testimony given by Staton-Fuller and Johnston differed significantly, however, about Johnston's state-of-mind at the time of the shooting. Staton-Fuller described Johnston as angry and adversarial. She stated that when she told Johnston that her father was coming to pick her up, Johnston replied that he was "ready and waiting for him." A friend who was on the phone with Staton-Fuller at that time testified that she heard Johnston say, "I don't give a fuck, he can come, I'm ready."

According to Staton-Fuller, after her father arrived, he announced that he "wanted to talk" to Johnston and knocked firmly on the bedroom door. Staton-Fuller explained that the knock caused the door, which was closed but not latched, to swing partly open. When the door opened,

---

[1] "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction," in this case, Johnston. *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 244 (2015)). At the same time, when reviewing the sufficiency of the evidence, "we view the facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Washington v. Commonwealth*, 75 Va. App. 606, 612 n.1 (2022).

Staton-Fuller heard gunshots as Johnston shot her father. She and her father fled the apartment, but he collapsed outside on the grass. She testified that she went back into the apartment to get a towel to hold on the bleeding gunshot wound. According to Staton-Fuller, when she went back inside the apartment, Johnston told her that he had shot her father "[b]ecause he was in [his] house."

Unlike Staton-Fuller's version, Johnston testified that he shot Fuller because he was afraid of him. Johnston said that Staton-Fuller told him that her father had guns and was "coming over to fuck [Johnston] up." He testified that he was afraid because he knew Fuller could be violent. He explained that before Fuller arrived, he tried to get dressed, pack clothes, and leave. Before he could finish, he heard Fuller enter the apartment and loudly ask "[w]here the fuck is he." "Seconds later," Fuller "barged into" the bedroom. Johnston explained that when the bedroom door opened, he drew his handgun and fired two shots at the door "[t]o protect" himself, even though he did not see Fuller with a weapon. He suggested that he was startled and afraid that Fuller would hurt or kill him, particularly given Staton-Fuller's earlier statement that her father had a gun. According to Johnston, he did not want to shoot Fuller but felt like he had no choice.

Johnston stayed in the apartment and waited for police. After police officers arrived, they recovered a handgun and a magazine from the bedroom floor. Fuller ultimately died of a gunshot wound to the chest.

At the close of the Commonwealth's case-in-chief and again after the close of its case-in-rebuttal, Johnston made motions to strike the evidence. The trial court denied the motions.

During the jury instruction conference, Johnston proposed the following instruction: "If you find from a consideration of all of the evidence in the case that the defendant's claim of self-defense creates a reasonable doubt that he committed the offense, then you shall find him not guilty." Concluding that other instructions adequately "addressed" the issue, the trial court declined to give the proposed instruction.

The trial court instructed the jury that it had to consider the proof of the elements of each charged offense and must acquit Johnston unless the Commonwealth proved every element beyond a reasonable doubt. In addition, the court gave an instruction on self-defense. It told the jury that if it believed that Johnston acted in self-defense, it was required to find him not guilty. The trial court also enumerated the elements of first-degree murder and the lesser-included offenses of second-degree murder and voluntary manslaughter.

The jury convicted Johnston of voluntary manslaughter, assault and battery of a family member, unlawfully discharging a firearm in an occupied dwelling, and using a firearm while committing murder. Given the voluntary manslaughter verdict, the trial court set aside the conviction for use of a firearm in the commission of murder. The court sentenced Johnston to a total of fifteen years and twelve months with one year suspended.

ANALYSIS

On appeal, Johnston challenges the trial court's refusal to give his proposed jury instruction about self-defense and reasonable doubt. He also argues that the evidence was insufficient to support the convictions.

I. Jury Instruction

Johnston contends that the trial court erred by refusing to specifically instruct the jury that if it found that his claim of self-defense created a reasonable doubt that he committed the offenses, it had to acquit him. He takes issue with the trial court rejecting his proposed combined instruction.

This Court reviews a trial court's decisions with regard to giving and denying requested jury instructions for abuse of discretion. *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). The appellate court's "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly

- 4 -

raises.'" *Id.* at 674-75 (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)).  In reviewing "the propriety of a particular instruction, we look to the instructions as a whole." *Graves v. Commonwealth*, 65 Va. App. 702, 707 (2016).  "If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." *Fahringer*, 70 Va. App. at 211 (quoting *Joseph v. Commonwealth*, 249 Va. 78, 90 (1995)).

Here, when instructing the jury, the trial court stated that Johnston was presumed innocent and could not be convicted unless the Commonwealth proved every element of each of the crimes "beyond a reasonable doubt."  The court also instructed the jury on self-defense and provided that the jury must find Johnston not guilty if it believed that he acted in self-defense.  In addition, the jury was informed that if it had a reasonable doubt as to the grade of homicide, it "must resolve that doubt in favor of the defendant."  These jury instructions used the language of the Model Jury Instructions.  *See* Model Jury Instrs.—Crim. Nos. 2.100, 33.720, 33.800, 33.810; *see, e.g.*, *Walker v. Commonwealth*, ___ Va. ___, ___ (June 1, 2023) (citing model jury instruction with approval).

Johnston acknowledges that the trial court properly instructed the jury on reasonable doubt and self-defense but argues that it "failed to explicitly inform the jury that the concept of reasonable doubt applied to [his] claim of self-defense."  Based on the trial court's instructions, however, the jury knew that if it had any reasonable doubt about Johnston's guilt of any degree of homicide, it was required to acquit him of that offense, an argument that defense counsel made to the jury.  The trial court also properly instructed the jury about self-defense and directed that the jury had to find Johnston not guilty of any homicide offense if it found that he acted in self-defense.

The jury was able to consider these instructions together and conclude that they required it to acquit Johnston if it found reasonable doubt based on self-defense. *See Patrick v. Commonwealth*, 50 Va. App. 650, 654 (2007) ("[It] is the duty of the jury to consider the instructions as a whole . . . ." (alteration in original) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 541 (1991))). In short, the trial court's separate instructions on reasonable doubt and self-defense "fully and fairly" conveyed the substance of Johnston's proposed instruction. *See Fahringer*, 70 Va. App. at 211. Further, the proffered instruction was repetitious, and as such the trial court did not abuse its discretion by refusing to give it. *See Joseph*, 249 Va. at 90 ("[A] trial court does not abuse its discretion in refusing to grant a repetitious instruction.").

## II. Sufficiency of the Evidence

Johnston contends that the evidence was insufficient to support his convictions. He suggests that the Commonwealth failed to exclude the possibility that he acted in self-defense.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). In conducting this review, "[a]n appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (alteration in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, "[t]he only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at ___ (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

- 6 -

reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In conducting our review, this Court likewise gives deference to the fact finder's assessment of witness credibility. "Determining the 'credibility of the witnesses and the weight of the evidence' are tasks left 'solely [to] the trier of fact' unless those determinations are 'plainly wrong or without evidence to support [them].'" *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alterations in original) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). This is so because the fact finder, in this case the jury, "has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "The trier of fact is 'free to believe or disbelieve, in part or in whole, the testimony of any witness.'" *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc)). "Similarly, '[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.'" *Id.* (alteration in original) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

It is under this well-established standard of review that we consider Johnston's challenge to his convictions. He argues that the evidence did not exclude his hypothesis that he shot Fuller in self-defense to repel a potential attack.

The jury was required to determine Johnston's state of mind at the time of the shooting. *See, e.g.*, *Dandridge v. Commonwealth*, 72 Va. App. 669, 681-82 (2021) (explaining that a malicious homicide is murder and an intentional killing done without malice in the heat of passion is voluntary manslaughter). Consistent with determining state of mind, the jury also had

to decide whether Johnston acted out of fear for his safety. *See, e.g.*, *Hines v. Commonwealth*, 292 Va. 674, 679 (2016).

If the jury determined that Johnston shot Fuller out of fear, it was tasked with deciding whether Johnston acted in self-defense. There are specific requirements to meet this affirmative defense. To support a claim of self-defense, an accused must show that "he reasonably feared death or serious bodily harm at the hands of his victim." *Id.* The defense also requires a finding that the degree of force used was "necessary to repel the aggressor." *Id.* (involving a self-defense claim raised by a defendant attacked in his own home); *see also Peeples v. Commonwealth*, 30 Va. App. 626, 635 (1999) (en banc) (explaining that the force used must be reasonable in relation to the threatened harm). In addition, someone claiming self-defense must establish "'that he was in imminent danger of harm' by showing 'an overt act or other circumstance that afford[ed] an immediate threat to safety.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Id.* (alterations in original) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded," is insufficient to support a claim of self-defense. *Id.* (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)). Finally, "[w]hether an accused prove[d] circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Meade v. Commonwealth*, 74 Va. App. 796, 807 (2022) (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016)). *See generally Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc) ("[W]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on [this Court] unless

- 8 -

plainly wrong." (second alteration in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010))).

Johnston argues that the record *compels* the conclusion that he acted in self-defense when he shot Fuller. This argument relies almost entirely on Johnston's own testimony. Staton-Fuller testified to a materially different version of the relevant events, and the jury had the authority to decide which version to believe. *See Nelson*, 73 Va. App. at 622.

Together with weighing the conflicting testimony of Staton-Fuller and Johnston, the jury was responsible for determining whether Johnston reasonably feared imminent death or serious bodily injury, whether an "overt act or other circumstances" caused that fear, and whether his fear was sufficient to justify the use of deadly force against the victim. *See, e.g.*, *Dandridge*, 72 Va. App. at 684; *Jones*, 71 Va. App. at 86. Viewing the evidence in the light most favorable to the Commonwealth, it provides no basis to disturb the jury's conclusion that Johnston did not act in self-defense.

Notably, Staton-Fuller testified that she told Johnston only that her father was coming to pick her up, in contrast to Johnston's testimony that she threatened that her father would hurt him. Staton-Fuller specifically denied asking her father to harm Johnston.[2] Unlike Johnston's claim that he so feared Fuller that he attempted to leave the apartment, Staton-Fuller testified that Johnston told her that Fuller could come because he was "ready and waiting for him." A second witness who was on the phone with Staton-Fuller testified that she heard Johnston say he was "ready" for Fuller. Staton-Fuller testified that her father announced his intention to speak with

---

[2] The record does not support Johnston's claim that Staton-Fuller "acknowledged" at trial that she told her father that she wanted him to "get" Johnston because Johnston had "put his hands on" her. Defense counsel asked Staton-Fuller whether she told her father that Johnston "put hands on me, I want you to get him." Staton-Fuller responded, "I, necessarily, didn't say that but I did tell him [that Johnston] put his hands on me." She stated that she was crying and her father was angry. She did not, however, acknowledge telling him to "get" Johnston.

Johnston and knocked on the bedroom door, rather than angrily barging into the bedroom without notice. Additionally, Staton-Fuller said that Johnston told her that he shot Fuller simply because Fuller was "in [Johnston's] house," not because he feared for his safety. Her testimony provides a basis for finding three key things: that Johnston did not have a reasonable fear of imminent death or serious bodily injury, that there was no "overt act" or other circumstance causing such a fear, and that using deadly force was not warranted or the only way to repel Fuller. Supporting this interpretation of events are the facts that Johnston fired twice and Fuller was unarmed.

For these reasons, the record supports the jury's determination that Johnston did not act in self-defense. Consequently, the evidence was sufficient to prove voluntary manslaughter and unlawful discharge of a firearm in an occupied building.[3]

## CONCLUSION

The trial court did not err by refusing to separately instruct the jury that it had to acquit him if it found that his claim of self-defense created a reasonable doubt that he committed the offenses. Further, the evidence, viewed in the light most favorable to the Commonwealth, does not support Johnston's claim that he shot Fuller in self-defense. Instead, it contains sufficient evidence to support the convictions for voluntary manslaughter and unlawful discharge of a firearm in an occupied dwelling. Accordingly, we affirm.

*Affirmed.*

---

[3] Although Johnston's first assignment of error challenges his conviction for assault and battery of a family member, he presents no argument or legal authority in support of that contention. Accordingly, that argument is waived, and we do not consider it. *See* Rule 5A:20(e); *see also Conley*, 74 Va. App. at 681.

- 10 -