COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Senior Judge Clements
Argued by videoconference

RAKIM JAMAL JACKSON

                                                MEMORANDUM OPINION* BY
v.        Record No. 0652-23-2                   JUDGE RANDOLPH A. BEALES
                                                JULY 2, 2024
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           David E. Johnson, Judge

        Gregory R. Sheldon (Bain-Sheldon, PLC, on brief), for appellant.

        Victoria Johnson, Senior Assistant Attorney General (Jason S.
        Miyares, Attorney General, on brief), for appellee.


        Following a jury trial, Rakim Jamal Jackson was convicted of (1) unlawful wounding and

(2) possessing a firearm after having been previously convicted of a violent felony.  On appeal,

Jackson argues that the trial court erred when it gave a non-model jury instruction defining

"imminent danger."  Jackson then argues that the evidence was insufficient to support his conviction

of unlawful wounding because he alleges that he acted in self-defense.  Jackson also argues that the

evidence was insufficient to support his conviction for possession of a firearm as a violent felon

because he claims that he acted out of necessity.

                                          BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

(2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On January 2, 2021, Selina Dowe helped her son move into a townhome in Chesterfield County. Dowe testified that a conflict arose with the next-door neighbor, Michelle Chavis, while Dowe's son and his friends were moving items out of a U-Haul truck. The argument was captured on three videos taken from Chavis's front door security camera.

The first video recorded by Chavis's camera showed several people shouting at one another in the front yards of these two neighboring townhomes. During the arguments, Chavis leaned against a vehicle parked in front of her home's walkway while Dowe stood on the walkway in front of her son's new home. Chavis's daughter, Ariel Jackson ("Ariel"), soon arrived in a white sedan. Ariel exited her vehicle and began arguing with Dowe. Shortly after Ariel arrived, Jackson arrived in a grey sedan with his two children inside the vehicle. The second video showed several men, including Tysheem Parham, standing around the U-Haul truck.[1] While Ariel and Dowe argued, Jackson stood on the sidewalk several parking spots away from the U-Haul. In the third video, Parham is seen standing behind the U-Haul truck with his back turned away from the other members of the group. Jackson suddenly walked toward Parham, pulled out a firearm, and placed the firearm to the back of Parham's head. Parham, who had his back to Jackson, quickly turned around and struggled with Jackson for a moment before Parham ran back toward the new townhome of Dowe's son. Gunfire then erupted as the group dispersed. Jackson then got into his grey sedan and drove away.

---

[1] Several minutes elapse between Jackson's arrival in the first video and the beginning of the second video.

Sergeant Shawn Beach of the Chesterfield Police Department arrived and found Parham injured inside the townhome of Dowe's son. Parham suffered gunshot wounds to his left thigh and his left elbow. Orthopedic surgeon Dr. Karanvir Prakash testified at trial that he treated Parham's injured elbow by inserting a plate into the arm. Dr. Prakash testified that Parham suffered from nerve damage and muscle loss to his arm, and Dr. Parkash further stated that Parham's elbow is "never going to be the same again." Police officers also found five shell casings in the townhomes' parking lot between the U-Haul truck and a black vehicle.

The day after the shooting, January 3, 2021, Detective Gregory Hopkins of the Chesterfield Police Department was looking at an apartment complex in Henrico County for a suspect who was connected to the prior day's shooting. Detective Hopkins testified, "I had seen a gentleman who had matched the description come out of the apartment and did a slight jog to a white sedan that was parked in the parking lot along with a female party." Detective Hopkins then told other officers that the couple left the area. Officer Bryan Farthing of the Henrico County Police Department soon saw the white sedan driving on Parham Road. Officer Farthing testified, "I then pulled in behind the suspect's vehicle and activated my emergency lights and siren to initiate a traffic stop. The vehicle quickly switched lanes going from the right lane to the left lane and attempted to what appeared to be an illegal u-turn right there at Parham [Road]." Officer Farthing stated that Ariel was driving the vehicle and that Jackson was in the passenger seat. After stopping the vehicle, the assisting officers found a loaded firearm locked inside the glovebox. Nicole Athey, an expert witness on firearms and the functionality of firearms, testified at trial that the five shell casings that were recovered from the townhomes' parking lot were all fired from what she described as the "Smith & Wesson model SD9VE caliber 9 mm, semiautomatic pistol" that was recovered in Ariel's white sedan. The Commonwealth also entered into evidence copies of Jackson's 2011 felony convictions for robbery, for use of a firearm in the commission of a felony, and for unlawful wounding.

Jackson testified in his own defense at trial. He stated that he and Ariel were at their apartment when Ariel received a phone call. Jackson testified that Ariel became upset after the phone call, that she mentioned something about her mother, and that she then quickly left the apartment. Jackson gathered their two children and then drove to the home of Ariel's mother. Jackson testified, "When I pull up I see a lot of commotion going on. And when I get out I see Tysheem Parham and he looks at me like what are you supposed to do. And that is exactly what he said and – um went and got a gun." Jackson also testified that Parham said that "I'll air this bitch out" before Parham went to get his firearm. Jackson stated, "He [Parham] goes and gets the gun and he puts it on his hip and he is like what's up? What you gonna do? And that how he was coming at me."

Jackson further testified, "I go by Ariel's car to try to get out of sight of this guy. I see the firearm. I grab it." While watching the video footage Jackson testified, "I put the gun to him [Parham] and I told him to give that shit up because I was at that point where I was just scared. I wanted him to give it up. If I could just disarm him then nobody hurt nobody because he was being aggressive." Jackson acknowledged that he shot at Parham first because he was scared for his life.

After all the evidence was presented, both attorneys agreed that a self-defense instruction should be given to the jury. The trial court gave Instruction 16, which states:

> If you believe that the defendant was without fault in provoking or bringing on the bodily injury, and you further believe that: 1. he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and 2. he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm, then he acted in self-defense, and you shall find the defendant not guilty.

The attorney for the Commonwealth also offered Instruction 23, which reads:

> "Imminent danger" is defined as "an immediate, real threat to one's safety." There must be some act menacing present peril and the act must be of such a character as to afford a reasonable ground

- 4 -

for believing there is a design to some serious bodily harm, and imminent danger of carrying such design into immediate execution.

Counsel for Jackson objected to the inclusion of Instruction 23, arguing that the instruction was not a model jury instruction and that it would likely cause confusion when read alongside Instruction 16, the self-defense instruction. The attorney for the Commonwealth stated that the language of Instruction 23 came directly from *Lienau v. Commonwealth*, 69 Va. App. 254 (2018), *aff'd on reh'g en banc*, 69 Va. App. 780 (2019), and that Instruction 23 was needed because Instruction 16 does not define the term "imminent danger." The trial court agreed with the attorney for the Commonwealth, and Instruction 23 was then given to the jury. After deliberating, the jury found Jackson guilty of unlawful wounding and guilty of possession of a firearm by a violent felon. Jackson now appeals to this Court.

## ANALYSIS

### I. Jury Instruction on Imminent Danger

In his first assignment of error, Jackson argues, "The trial court erred by giving a non-model jury instruction on 'imminent danger,' as it conflicted with the instruction on self-defense whereby the circumstances needed to be viewed as they reasonably appeared to Mr. Jackson at the time of the shooting." The Supreme Court has held, "As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009). "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction," which is the Commonwealth in this case. *Id.* In addition, the Supreme Court has also stated that "whether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

Jackson argues that the definition of imminent danger in Instruction 23 was not an accurate statement of the law regarding self-defense because "it required a real threat and not what appeared to be reasonable to Jackson based upon the circumstances as they appeared to him." Jackson also argues that Instruction 23's definition of "imminent danger" conflicted with Instruction 16, the self-defense instruction.

"The principles governing a plea of self-defense are well-established." *Commonwealth v. Sands*, 262 Va. 724, 729 (2001). The Supreme Court has consistently held, "To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* In *Sands v. Commonwealth*, the Supreme Court has also stated, "In the context of a self-defense plea, 'imminent danger' is defined as 'an immediate, real threat to one's safety . . . .'" *Sands*, 262 Va. at 729 (quoting *Black's Law Dictionary* 399 (7th ed. 1999)); *see also Lienau v. Commonwealth*, 69 Va. App. 254 (2018), *aff'd on reh'g en banc*, 69 Va. App. 780 (2019). Indeed, the Court has long held, "In determining whether the accused had the right to shoot the deceased in self-defense, the test is *not* whether the accused *thought* or *believed* at the time of the killing that he was in imminent danger of great bodily harm at the hands of the deceased." *Perkins v. Commonwealth*, 186 Va. 867, 877 (1947) (first emphasis added). Instead, the Court has emphasized, "He must have believed and must have had reasonable ground to believe, at the time, that he was in such danger." *Id.*

Given these principles, the language of Instruction 23 correctly states the law of self-defense because the instruction quotes verbatim from binding precedent from the Supreme Court and from an *en banc* panel of this Court. *See Sands*, 262 Va. at 729; *Lienau*, 69 Va. App. at 265. Instruction 23 accurately defined one of the key elements of a plea of self-defense that is provided in

Instruction 16. Indeed, when read together, Instruction 16 and Instruction 23 accurately state both the objective component and the subjective component of the law of self-defense. *Colas v. Tyree*, 302 Va. 17, 29 (2023) ("In Virginia, self-defense includes both subjective and objective components.").

Consequently, given that Instruction 16 and Instruction 23, when read together, accurately state the Supreme Court's and this Court's binding precedent on the law of self-defense, we cannot say that the trial court abused its discretion when it granted the Commonwealth's request to include Instruction 23.

## II. Sufficiency of the Evidence

Jackson also argues on appeal that the evidence was insufficient to support his convictions because he proved that he acted in self-defense and that he acted out of necessity. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In such cases, '[t]he Court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## A. Self-defense

Jackson argues that the evidence is insufficient to support his unlawful wounding conviction because he alleges that he shot Parham out of self-defense. This Court has consistently held, "Whether an accused proves circumstances sufficient to create a reasonable

doubt that he acted in self-defense is a question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993). On appeal, "[w]e are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008).

Here, the jury saw the video footage that showed Parham calmly looking away from the commotion taking place in front of the townhomes. The video then shows that Jackson suddenly approaches Parham from behind while pointing his pistol to the back of Parham's head. Parham turned toward Jackson, and then Parham fled from Jackson as Jackson continued to point his gun at Parham. Jackson then fired the first shots at Parham (as Jackson acknowledged in his testimony at trial) as Parham fled from Jackson into a townhome. Parham was struck in his thigh and elbow. These facts certainly do not show that Parham posed "an immediate, real threat" to Jackson's safety that would justify Jackson's decision to shoot Parham. *Sands*, 262 Va. at 729.

Furthermore, given the video footage of the incident, the jury was also entitled to reject Jackson's self-serving testimony that Parham was the aggressor in this encounter and, therefore, was entitled to implicitly find that Jackson was lying to conceal his guilt. *See Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."). The video simply does not show – at the time that Jackson shot Parham – that Parham acted in a way that would have given Jackson a reason to fear for his own life or for the lives of the other people at the scene. Consequently, we cannot say that the trial court was plainly wrong or without credible evidence when it determined that Jackson did not shoot Parham in self-defense. Therefore, we also cannot conclude that no rational factfinder could have found the evidence sufficient for Jackson's conviction of unlawful wounding.

### B. Necessity Defense

Jackson also argues that the evidence was insufficient to sustain his conviction for possessing a firearm after having been previously convicted of a violent felony because he maintains that he acted out of necessity, given the circumstances on January 2, 2021, when he obtained the firearm. The Supreme Court has recognized that a defendant can raise the defense of necessity against the charge of possession of a firearm by a convicted felon. *Small v. Commonwealth*, 292 Va. 292, 299-300 (2016). When raising this defense, the defendant must show: "(1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm." *Edmonds v. Commonwealth*, 292 Va. 301, 306 (2016) (quoting *Humphrey v. Commonwealth*, 37 Va. App. 36, 45 (2001)). "[T]he necessity relied upon must not arise out of defendant's own misconduct." *Id.* (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). Furthermore, this Court has held, "Necessity provides no defense to a charge of possession of a firearm by a convicted felon if the felon takes possession of the firearm before the threat becomes imminent or retains possession longer than required after the danger has passed." *Humphrey*, 37 Va. App. at 50.

Here, Jackson failed to demonstrate that there was "a lack of other adequate means to avoid the threatened harm" when Jackson armed himself with a firearm. *Edmonds*, 292 Va. at 306. Rather than leaving the scene or calling the police to deescalate the situation, Jackson testified that he went to Ariel's car and grabbed a firearm in order to disarm Parham himself. As discussed *supra*, Parham was actually facing away from Jackson when Jackson approached Parham from behind. Jackson then pointed the firearm to the back of Parham's head, and Jackson soon fired the first shots at Parham. These facts clearly show that Jackson escalated the encounter by obtaining a

pistol and then threatening Parham with that pistol. Given that Jackson could have deescalated the situation by calling the police or could have avoided the situation altogether by leaving the scene, Jackson simply did not act out of necessity when he chose to pick up a firearm to confront Parham. Because Jackson is a previously convicted violent felon, it was unlawful for Jackson to even possess that firearm. Consequently, under these circumstances, it was clearly not necessary for Jackson to pick up and use the firearm as he did here. Therefore, we certainly cannot say that no rational factfinder could have found the evidence sufficient for Jackson's conviction for possession of a firearm after having been previously convicted of a violent felony.

CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the trial court and uphold both of Jackson's convictions.

*Affirmed*.