COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and White
Argued at Norfolk, Virginia

UNPUBLISHED

ELTHON VALERIO

v.      Record No. 1660-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
MAY 28, 2024

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

Andrew M. Sacks (Stanley E. Sacks; Sacks & Sacks, P.C., on brief),
for appellant.

Suzanne Seidel Richmond, Assistant Attorney General, for
appellee.[1]

Following a bench trial, the Circuit Court for the City of Norfolk (the "trial court")

convicted Elthon Valerio ("appellant") of malicious wounding, use of a firearm in the commission

of a felony, and possession of a firearm by a violent felon under Code §§ 18.2-51, -53.1, and -308.2,

respectively. Appellant argues on appeal that the evidence was insufficient to sustain his

convictions because he acted in self-defense. He specifically asserts that his use of a firearm in self-

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Because appellant filed his opening brief on May 22, 2023, the Commonwealth's
response brief was initially due on June 21, 2023. At the Commonwealth's request, this Court
extended the filing deadline to July 21, 2023. The Commonwealth did not file its brief by that
date. Two months later, on September 21, 2023, the Commonwealth requested another 30-day
extension to file its brief, as well as permission to participate in oral argument. Although
appellant did not oppose that motion, this Court denied the Commonwealth's requests via order
dated October 20, 2023. The Commonwealth then attached a response brief to its October 26
motion to reconsider this Court's prior ruling. By order dated November 16, 2023, this Court
again denied the Commonwealth's request for an extension of time and held that the untimely
response brief would not be considered. This Court did, however, grant the Commonwealth
permission to present oral argument.

defense was legally justified "under the Virginia doctrine of necessity." Appellant also argues, in

the alternative, that the evidence was insufficient to support his convictions because it did not

establish that he acted with malice. Lastly, appellant alleges that the trial court erred in denying his

motion for bail during the pendency of this appeal. Finding no error, this Court affirms the

judgment of the trial court.

## BACKGROUND[2]

In May of 2021, Amie Feazeo's grandmother lived next door to appellant. Although

Feazeo herself had been a neighbor before moving away approximately a year before, she only

knew appellant in passing and had never experienced any trouble with him. On May 10,

however, a series of escalating conflicts occurred involving appellant's and Feazeo's

grandmother's properties.

First, the fire department was called about a fire pit in appellant's yard, and later animal

control was called about dogs in Feazeo's grandmother's home. Next, Feazeo received a phone

call, while still at her grandmother's home, informing her that appellant and others had attacked

her boyfriend with a bat while he was walking to the store. While still on the phone, Feazeo

went to appellant's house and started banging on the storm door in front of his metal front door;

she screamed six or seven times for him to come outside. She never touched the metal front door

or tried to enter the home.

After banging for approximately 15 seconds, Feazeo unintentionally broke a glass pane in

the storm door. She took a step back from the shattered glass, between two and three feet from

---

[2] On appeal, this Court recites the facts "in the 'light most favorable' to the
Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App.
225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this
Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and
regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences
to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323,
324 (2018)).

the storm door.  Without warning, appellant opened the metal front door and shot Feazeo with a firearm through the storm door.  The bullet struck her left shoulder area and exited her body.  Although appellant's girlfriend, Monica Rainey, and their child were standing in the doorway when appellant fired the gun, no one in the house said anything to Feazeo before or after appellant shot her.  Feazeo received medical treatment for the gunshot wound but continued to suffer nerve damage and pain at the time of appellant's trial.

After the shooting, Rainey called 911, claiming that someone was trying to break into her home and stating that she "had to shoot [her] gun."  Appellant called his sister, Latricia Clotter.  Shortly thereafter, Clotter arrived at appellant's house and was asked to take a black case (the "case") to her vehicle.[3]  Although she did not know what was inside the case, she later acknowledged to police that it appeared to be a gun case.  Clotter placed the case in the trunk of her car and attempted to leave, but she was stopped by the police.  She consented to a search of her trunk in which officers found a Taurus handgun and the case.  Clotter testified that the Taurus belonged to her.  Inside the case was another gun—a Ruger—as well as two loaded Ruger magazines and a black wallet containing appellant's ID card, driver's license, social security card, birth certificate, and cash.  Inside appellant's house, on a bedroom closet shelf, officers located a gun box corresponding to the Ruger.

During his initial interview, appellant told police that he was in the shower when the banging started.  After hearing the glass break, he looked out of the shower and he saw Rainey opening the front door while Feazeo was pushing on the storm door.  Appellant claimed Rainey

---

[3] Clotter testified at trial that appellant was in the bathroom when she arrived and that it was Rainey who handed her the black case.  She had previously told police on scene, however, that appellant was in the shower when she arrived but that he "peep[ed] out" and told her to put the black case in her car.

then slammed the front door shut and he called his mother for help. Notwithstanding that statement, appellant denied knowing that Feazeo had been shot.

When initially questioned by police, Rainey said that the incident started when the outdoor cameras on the house alerted her that someone was moving outside. She then heard a banging noise at the front door and recognized Feazeo on the camera feed. According to Rainey, Feazeo "pushed" or "cracked" the front door open, but police found no sign of forced entry on the metal door.[4] Rainey further stated that appellant did not approach the front door until the police arrived. And although she claimed to own what she thought was a Ruger gun, Rainey insisted that neither she nor appellant shot Feazeo. Appellant insisted he did not know that Rainey owned a firearm.

Appellant was eventually charged with: (1) malicious wounding, (2) use of a firearm in the commission of a felony, and (3) possession of a firearm by violent felon.[5] At trial, appellant and Rainey testified to a version of events notably different from their statements to police. In their new accounts, Rainey grabbed the gun after hearing the glass break and told appellant that someone was trying to break into the house. Appellant then "snatched" the gun from her when Feazeo began "kicking" or punching the door open. Despite also describing Feazeo as simply opening the door, appellant testified that he shot at Feazeo only after she forced the door open and that he closed the door afterwards before returning to the shower. At that point, Rainey took their child into the bedroom and called Clotter before putting the Ruger in the case.

The trial court convicted appellant of all three charges. In making that determination, the trial court credited the testimony of the Commonwealth's witnesses and rejected appellant's

---

[4] Rainey made no statements about Feazeo kicking the door.

[5] Appellant was convicted in 2009 of robbery under Code § 18.2-58, a violent felony as defined under Code § 17.1-805.

- 4 -

claim of self-defense, noting that both appellant's and Rainey's testimony lacked credibility largely due to their changing stories and the physical evidence corroborating Feazeo's account that she never opened the main front door. Appellant moved to set aside the verdict, insisting the evidence proved that he acted in self-defense and did not prove malice, and for post-trial bond pending appeal. The trial court denied both motions and sentenced him to 18 years of incarceration with 10 years suspended.

This appeal followed.

ANALYSIS

Appellant first challenges the sufficiency of the evidence supporting all three of his convictions, alleging that "the evidence created a reasonable doubt as to whether [his] use of force by firearm was in self[-]defense." Despite acknowledging his status as a convicted violent felon, appellant asserts that the need to defend himself justified "his lawful use of a firearm . . . under the Virginia doctrine of necessity," thereby rendering him not guilty of possessing a firearm under Code § 18.2-308.2. Appellant alternatively argues that the Commonwealth's evidence was insufficient to convict him of malicious wounding because it failed to prove he acted with malice. He therefore contends that, "at most," the evidence "support[s] a finding of guilt[] only of unlawful wounding." Based on that conclusion, appellant further reasons that his conviction for using a firearm in the commission of a felony should be reversed because unlawful wounding is not a qualifying felony offense for conviction under Code § 18.2-53.1. Lastly, in his final assignment of error, appellant alleges that the trial court erred in denying his "motion for bail pending appeal."

I. Self-Defense

Regarding appellant's initial sufficiency challenge, this Court finds nothing in the record indicating that the trial court erred in rejecting appellant's self-defense claim and convicting him of all three charged offenses.

- 5 -

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

A person is guilty of malicious wounding, a Class 3 felony, when he "maliciously shoot[s], stab[s], cut[s], or wound[s] any person or by any means cause[s] [her] bodily injury, with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. If such offense occurs via firearm, the defendant is guilty of the separate offense of using a firearm to commit a felony. *See* Code § 18.2-53.1 ("It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm . . . while committing or attempting to commit . . . malicious wounding as defined in § 18.2-51."). Finally, Code § 18.2-308.2(A) prohibits knowing and intentional possession of a firearm by any person previously convicted of any felony.[6]

Appellant argues that the evidence established reasonable doubt as to whether he acted in self-defense and that the necessity doctrine excused his possession of the firearm. "Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002)

---

[6] Code § 18.2-308.2(A) also provides that "any person who violates this section . . . and who was previously convicted of a *violent* felony as defined in § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment for five years." (Emphasis added).

(quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused" meets this threshold "is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Commonwealth v. Needham*, 55 Va. App. 316, 326 (2009) (quoting *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986)).

To establish self-defense, "a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* "The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.* Additionally, "the amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989). "[W]hen a party is assaulted in his own home, that party, as a homeowner (or tenant, as the case may be), has the right to use whatever means necessary to repel the aggressor, 'even to the taking of life.'" *Hines*, 292 Va. at 681 (quoting *Fortune v. Commonwealth*, 133 Va. 669, 687 (1922)).

The Commonwealth presented evidence that, at the time of the shooting, neither appellant nor his family were in imminent danger of harm. Feazeo was not in his home, nor was she trying to enter it. Although she had broken the glass of the storm door, she stepped back from the main door and made no further effort to enter or attack appellant or his family. Appellant did not attempt to speak to Feazeo, call the police, or simply ignore Feazeo. He instead chose to open the door himself and shoot Feazeo. That evidence is sufficient to overcome appellant's claim of self-defense.

Moreover, this Court will not disturb the trial court's factual findings as to the credibility of the witnesses, which supports its judgment that appellant did not meet his burden of proving self-defense. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole

responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)); *see also Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc) (holding that the factfinder is "free to believe or disbelieve, in part or in whole, the testimony of any witness"); *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). Regarding appellant's and Rainey's testimony, the trial court found that their continually evolving stories of the shooting lacked credibility. "Potential inconsistencies in testimony are resolved by the fact finder." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). "When 'credibility issues have been resolved by the [factfinder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Id.* at 291 (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

Here, Rainey gave three versions of the event: her statement on the 911 call that she shot Feazeo; her denial of any shooting to police when they arrived on scene; and her testimony at trial that appellant was the shooter. Appellant's story also changed significantly between his police interview—when he claimed he had no idea Feazeo had been shot on his own porch—and at trial—when he admitted to being the shooter. Further, both Rainey's and appellant's testimony was successfully impeached with these inconsistencies; Feazeo's testimony was not. On these facts, the trial court was not plainly wrong to reject appellant's and Rainey's version of events. Therefore, because the evidence supports the finding that appellant was not "assaulted in his own home," he had no "right to use whatever means necessary to repel the aggressor." *Hines*, 292 Va. at 681. His decision to shoot Faezio does not demonstrate an act of justifiable self-defense that warrants

reversal of his conviction for malicious wounding; accordingly, this Court affirms the conviction.[7]

II. Malice

In the alternative appellant argues that, even if he did not act in self-defense, the evidence was insufficient to convict him of malicious wounding because it failed to prove he acted with malice.

"Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997) (citing *Pugh v. Commonwealth*, 223 Va. 663, 667 (1982)). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (alteration in original) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence." *Luck v. Commonwealth*, 32 Va. App. 827, 833 (2000). "Malice may be inferred 'from the deliberate use of a deadly weapon.'" *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996) (quoting *Perricllia v. Commonwealth*, 229 Va. 85, 91 (1985)).

Although Feazeo sought a confrontation by banging on the door, appellant nevertheless escalated the volatile situation from words to violence when he armed himself with a firearm he knew was illegal for him to possess before opening the front door. Appellant's choices, up to and

---

[7] For the same reasons, this Court disagrees that the doctrine of necessity permitted appellant's possession of the firearm. Although a defendant previously convicted of a violent felony may not possess a firearm, the common-law necessity defense may permit him to do so if necessary for the purpose of self-defense. *See Humphrey v. Commonwealth*, 37 Va. App. 36, 44-48 (2001). But since appellant has not established his need for self-defense, he cannot rely on the claim of necessity to excuse his unlawful possession a firearm.

including shooting Feazeo without any warning or hesitation, demonstrate that he acted with malice as opposed to a less culpable mindset. This Court is unpersuaded by appellant's claim that he shot Feazeo "in the heat of passion" based on "reasonable provocation."[8]

"A killing done in the heat of passion and upon reasonable provocation will reduce a homicide from murder to voluntary manslaughter." *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003). "'As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the *furor brevis* necessary to rebut the presumption of malice arising from a homicide is a question of fact' to be decided by the jury." *Dandridge v. Commonwealth*, 72 Va. App. 669, 682 (2021) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131-32 (2016)). Even outside the context of homicide, acting in the heat of passion "excludes malice [only] when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Rhodes*, 41 Va. App. at 200 (second alteration in original) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). It is "determined by the nature and degree of the provocation and may be founded upon rage, fear or a combination of both." *Id.* at 200-01 (quoting *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986)).

Based on the evidence presented at trial, including appellant's less-than-credible testimony, a reasonable factfinder could conclude that Feazeo's shooting did not result from "impulse without conscious reflection," but instead was the culmination of a series of calculated steps appellant took seeking that specific outcome. *Rhodes*, 41 Va. App. at 200 (quoting *Graham*, 31 Va. App. at 671). Accordingly, this Court finds no error in the trial court's judgment that appellant acted with malice when shooting Feazeo and, therefore, affirms his malicious wounding conviction.

---

[8] "Deliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015).

III. Appeal Bond

Lastly, appellant asserts the trial court erred in denying him bond during the pendency of this appeal. A trial court's decision to deny bail under Code § 19.2-319 is reviewed for abuse of discretion. *Strohecker v. Commonwealth*, 23 Va. App. 242, 250 (1996); *see also Commonwealth v. Duse*, 295 Va. 1, 7 (2018) ("The trial court must exercise 'not an arbitrary discretion, but a sound judicial discretion.'" (quoting *Judd v. Commonwealth*, 146 Va. 276, 277 (1926))). This standard "requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a different result in the first instance." *Duse*, 295 Va. at 7 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

"Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). The "three principal ways" a trial court can abuse its discretion are by (1) "fail[ing] to consider a relevant factor that should have been given significant weight," (2) "consider[ing] and giv[ing] significant weight to an irrelevant or improper factor," or (3) "commit[ting] a clear error in judgment" while weighing "all proper factors, and no improper ones." *Duse*, 295 Va. at 7 (citing *Lawlor*, 285 Va. at 213).

"[P]ost-conviction bail is generally less liberally accorded than in the pretrial stage." *Jeffrey v. Commonwealth*, 77 Va. App. 1, 8 (2023) (en banc) (alteration in original) (quoting *Dowell v. Commonwealth*, 6 Va. App. 225, 228 (1988)). Moreover, "[u]nlike Code § 19.2-120 which governs pre-conviction bail, Code § 19.2-319 contains no general standards by which the exercise of discretion to grant or deny post-conviction bail may be measured." *Id.* at 7-8 (quoting *Dowell*, 6 Va. App. at 228). Nonetheless, the "primary test" for determining whether a defendant should be released following conviction for a felony "still requires the trial court to

consider questions essential to all bail decisions — whether the defendant will appear for hearing or at such other time . . . as may be directed and whether the defendant's liberty will constitute an unreasonable danger to himself and the public." *Dowell*, 6 Va. App. at 229 (citing *Chambers v. Mississippi*, 405 U.S. 1205, 1206 (1972)). The trial judge should consider "the totality of the record, considering factors such as '[t]he nature and circumstance of the offense, the fact of conviction, the quantum of punishment assessed, defendant's . . . employment [status], defendant's record of escape, and defendant's apparent propensity for violence.'" *Jeffrey*, 77 Va. App. at 8 (alterations in original) (quoting *Commonwealth v. Smith*, 230 Va. 354, 363 (1985)). The trial judge may also consider "the 'age of the defendant, his health, his ties to the community, the pendency of other charges against the defendant,'" and other factors "to determine whether 'the defendant will appear when required . . . and whether the defendant's liberty represents an unreasonable danger to himself and the public.'" *Id.* (alteration in original) (quoting *Dowell*, 6 Va. App. at 229).[9]

Appellant has not established that the trial court abused its discretion in denying him post-conviction bond. He was convicted of several felonies, including an act of violence, and the trial court imposed an active eight-year sentence of incarceration. Further, he was previously twice convicted of contempt—first in 2008 and again in 2021—along with a failure to appear conviction in 2008. Weighing the "nature and circumstance of th[is] offense," appellant's

---

[9] Post-conviction bail determinations must be done on a case-by-case basis. *Jeffrey*, 77 Va. App. at 8. This Court has long recognized that

> [b]ecause each case has its own unique factors, precise rules cannot be formulated. However, whatever factors are used and considered determinative must bear upon the essential questions whether the defendant will appear at further proceedings when required to do so and whether defendant represents an unreasonable danger to himself and the public.

*Id.* (quoting *Dowell*, 6 Va. App. at 229).

"conviction," the "quantum of punishment," his "propensity for violence," and record of non-compliance this Court cannot say the trial court abused its discretion in denying appellant post-conviction bond. *Id.* (quoting *Smith*, 230 Va. at 363).

CONCLUSION

For the foregoing reasons, this Court affirms the judgment of the trial court.

*Affirmed.*