COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Bernhard and Senior Judge Humphreys
Argued at Virginia Beach, Virginia


DARION ROBB

MEMORANDUM OPINION[*] BY
v.      Record No. 1363-24-1              JUDGE MARY BENNETT MALVEAUX
                                          DECEMBER 9, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
C. Peter Tench, Judge

Brandon K. Fellers (Invictus Law, on briefs), for appellant.

C. David Sands, III, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Darion Robb ("appellant") of voluntary

manslaughter, in violation of Code § 18.2-35. Appellant first argues that the trial court erred in

granting a mistrial over his objection. He further contends that at his retrial, the trial court

improperly limited his opening statement and incorrectly instructed the jury. Appellant also

challenges the sufficiency of the evidence to sustain his conviction. For the reasons that follow, we

affirm the trial court's judgment.

I. BACKGROUND

"We recite the facts in the light most favorable to the Commonwealth, the prevailing

party below." *Johnson v. Commonwealth*, 85 Va. App. 257, 266 (2025) (quoting *Camann v.*

*Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc)). In doing so, we discard any evidence

that conflicts with the Commonwealth's evidence and regard as true all the credible evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Id.*

A. First Trial and Motion for Mistrial

Appellant was indicted for the voluntary manslaughter of Allyjah Rivera, and a jury trial for that offense began on October 23, 2023. In his opening statement, appellant argued that he shot Rivera in his home to protect himself and his wife from an imminent threat of death or serious bodily harm. He asserted that he had a legal right to do so under the castle doctrine.[1] Defense counsel also told the jury, "[y]ou're going to have to put yourself in [appellant's] shoes and say was [sic] his actions reasonable" when someone "lunge[s] at you . . . and your wife with a knife" while children are asleep nearby.

The Commonwealth objected and moved for a mistrial. It contended that the castle doctrine was inapplicable because at the time of the incident Rivera was a resident of appellant's home and not an intruder. In addition, the Commonwealth asserted it was improper for appellant to ask the jurors to imagine themselves in appellant's "shoes" and to "decide what they would do" in the stated situation. Appellant countered that his arguments were proper and opposed granting a mistrial. The trial court stated, "I don't think you can say to the jury to put themselves in [appellant's] shoes. I think that's improper," and granted the motion for mistrial. Appellant then asked the trial court to consider giving a curative instruction to the jury, rather than

---

[1] *See Hines v. Commonwealth*, 292 Va. 674, 679 (2016) (noting that "when a party assaults a homeowner in his own home . . . , the homeowner has the right to use whatever force necessary to repel the aggressor"). Under the doctrine, however, deadly force is only permissible if the intruder is "trespass[ing]" and such force is "necessary to prevent a felonious destruction of [the] property or the commission of a felony therein, or to defend himself against a felonious assault against his life or person." *Bausell v. Commonwealth*, 165 Va. 669, 688 (1935); *see also Fortune v. Commonwealth*, 133 Va. 669, 687 (1922) (noting that the doctrine does not apply if the decedent was peaceably present in the home or curtilage under an implied license). As discussed below, the evidence demonstrated that Rivera had moved into appellant's home weeks before the shooting and possessed a key to the house she was authorized to use.

imposing the "grave remedy" of a mistrial. The Commonwealth contended that such a remedy would be inadequate because "[y]ou can't unring the bell regardless of what we tell them." The trial court agreed with the Commonwealth and entered an order reflecting a mistrial.

B. New Trial and Pretrial Ruling

Before retrial with a new jury, the Commonwealth moved to limit appellant's opening statement. Specifically, it asked that appellant be prohibited from asking jurors to "place themselves in the shoes of [appellant]" or mentioning that jurors would be instructed on the castle doctrine. In response, appellant argued that a "statement to the jurors . . . where they need to put themselves in [appellant's] shoes" would be consistent with "the law in Virginia on self-defense and defense of others," and therefore it would not be improper. He also contended that the castle doctrine was potentially applicable because there was "no evidence that Ms. Rivera entered the home peaceably."

The trial court granted the Commonwealth's motion. It noted that opening statements are "just statements of fact" where the parties "make statements that this is what the evidence is going to be," rather than "arguing the law." But depending on the evidence presented during trial, appellant might be entitled to a jury instruction "on justifiable self-defense or maybe excusable self-defense. . . . I will instruct the jury if it gets that far."

C. Evidence at Trial

At the time of Rivera's death, appellant and Michelle Robb ("Michelle") were married, although they had separated in November 2021. During the separation, appellant and Rivera met while they were serving aboard the same U.S. Navy ship. Appellant and Rivera dated, on and off, for about a year, and Rivera moved into appellant's Suffolk home with him in March 2023. When Rivera moved in, she brought her pet cats and belongings with her.

On March 19, 2023, Siandra Garcia, Rivera's friend and Navy colleague, asked appellant "about the move-in with [Rivera] and the cat situation." Appellant told Garcia that "everything was fine" after the move and that he and Rivera had "built the cats a room." At trial, when asked whether she and appellant had discussed "a break-up or anything" pertaining to Rivera, Garcia replied negatively.

Appellant testified that on the morning of March 20, 2023, Rivera awakened after sleeping with him in the master bedroom of the house. She left the house that morning to begin a 24-hour duty shift on their ship.

That night, appellant called Michelle and said he wanted to talk about "reconciling [their] marriage." Because Rivera was scheduled for a 24-hour shift, she was not expected home that night. Appellant disabled the doorbell video camera so that Rivera could not see who visited, and Michelle came over to the house around 10:30 p.m. When she arrived, the two children she shared with appellant were asleep in a bedroom. Michelle and appellant talked, had sexual intercourse, and went to sleep together in the master bedroom with the door locked at about 11:00 p.m.

In the early morning hours of March 21, 2023, Garcia received a phone call from Rivera. Rivera called her friend "because she showed up at the[] house and realized that [appellant] was cheating on her" with Michelle. The Commonwealth introduced a recording of the phone conversation into evidence. In the recording, Rivera told Garcia that she was at the house and had left duty because she "had to come home." She could also be heard arguing with appellant and shouting, "I live here!"

Appellant stated he woke up at about 4:00 a.m. that morning when Rivera phoned him. He did not answer her call but got up and walked into the kitchen. Rivera phoned again, and appellant looked outside and saw her on the front porch; appellant did not see any weapons at

that time. Appellant retreated to the bedroom, locked the door behind him, and "barricaded" the door by placing his body against it. Rivera, who appellant acknowledged had keys to the home, entered the house and began yelling and banging on the bedroom door.

Michelle was awakened by a home security alarm that sounded when the front door was opened. She "crouched down by the bed" and heard "a lot of banging and yelling at the door." Using an application on his phone, appellant disarmed the alarm system to prevent a police response. Rivera continued banging on and yelling through the bedroom door, saying that she "want[ed] to fucking see" Michelle and could not believe appellant "would do this to [her]." Appellant positioned himself behind the locked door, preventing Rivera from entering the bedroom. Appellant testified that although he was "a little scared," at that point he was "just trying to avoid a confrontation."

After a period of time, Rivera stopped banging on the bedroom door and appellant heard the front door "chime" as Rivera went outside.[2] While Rivera was outside, appellant heard the sound of air escaping from a tire. He later discovered that an automobile tire had been slashed.

Rivera returned inside the home and resumed banging on the bedroom door. Appellant told Michelle to grab his gun, and she reached for a rifle that was in the corner. Appellant told Michelle not to get the rifle, and instead he grabbed a nine-millimeter handgun from his nightstand. Michelle testified that she "started to black out" and then went to the adjoining bathroom. Appellant threatened Rivera that he would call the police, but he did not call 911. Through the locked door, Rivera repeatedly asked, "Where is she?" And to appellant, Rivera said, "How could you?"

---

[2] A home security video recording from the back stoop of the house showed Rivera outside the home with an object in her hand.

Appellant, holding his gun, opened the bedroom door with his free hand. Rivera entered the bedroom, and appellant immediately saw that she had a knife in her right hand. Appellant pointed his firearm at Rivera, commanded her to stop, and used a "tactical" strobe light on his firearm to "try[] to get her to stop." Rivera "bypasse[d]" appellant and moved toward the bathroom. As Rivera entered the bathroom, appellant fired "one round" at her that struck her in the chest. Michelle heard the gunshot and saw Rivera fall as she was entering the bathroom, but never saw a knife.

After she was shot, Rivera lay bleeding on the bathroom floor. She told appellant she had thought that he loved her and exclaimed that she was going to die. Appellant instructed Michelle to call 911. When the police arrived at the home around 4:20 a.m., Rivera was on the floor of the master bathroom. Medical personnel transferred Rivera to a local hospital, where she was pronounced dead.

Rivera suffered a single fatal gunshot wound to the right upper chest. The forensic pathologist who conducted Rivera's autopsy noted that the bullet's trajectory had been downward, from Rivera's front to her back, and she opined that Rivera had been facing toward the gun that shot her.

Police found marks on the outside of the master bedroom door while noting that the door's lock, handle, and doorjamb were undamaged. They also found two guns on the kitchen counter. A knife was missing from the knife block in the kitchen, and a silver knife with reddish-brown stains was found on the counter near the sink in the master bathroom. Forensic testing of the reddish-brown stains developed a DNA profile and eliminated appellant as a contributor of the profile. Rivera, however, could not be eliminated as a contributor.

The police also found a notebook in the house, which was entered into evidence at trial, without objection. Appellant had written notes relating to a separation agreement from Michelle,

questioning whether he would continue to send her money, stating that she sent him "degrading" text messages, and expressing frustration that she refused to put their younger child in daycare. In addition, appellant had written, "[p]lant crack in her car or in the kids' bag."

Appellant's home was equipped with four security cameras. Police determined that before Michelle arrived at the house that evening, the exterior cameras at the front door and driveway had been disabled.

When the police questioned appellant at the home after the shooting, appellant said that he and Rivera "were done" or were "breaking up" and that he had told Rivera this the night before. Appellant also testified at trial that on the night of March 20, 2023, he "ended it" with Rivera during a phone conversation that occurred sometime between 6:00 and 8:00 p.m. He also testified that at the time of trial, he and Michelle had reconciled and that during the incident, he had been "scared" and in fear for his and Michelle's lives.

Appellant moved to strike at the close of the Commonwealth's case in chief and challenged the sufficiency of the evidence of provocation and heat of passion. The trial court denied the motion. After presenting his own evidence, appellant renewed his motion to strike on the same grounds. Again, the trial court denied the motion.

Appellant proffered jury instructions on provocation with respect to Michelle and self-defense and defense of others, which the trial court refused. And appellant objected to an instruction regarding character evidence that the Commonwealth proffered. The trial court overruled the objection and gave the instruction to the jury.

The jury convicted appellant of voluntary manslaughter. This appeal followed.

## II.  ANALYSIS

### A.  Mistrial

Appellant argues that the trial court erred in granting the Commonwealth's motion for a mistrial.

In Virginia, a trial court may discharge a jury and declare a mistrial when "there is a manifest necessity for such discharge."  Code § 8.01-361.  And where "manifest necessity compels a mistrial, retrial does not violate double jeopardy principles."  *King v. Commonwealth*, 40 Va. App. 364, 373 (2003).  Absent a finding of manifest necessity, however, "the constitutional prohibition against double jeopardy entitles a defendant to the 'valued right to have his trial completed before a particular tribunal,' that is, 'the right . . . to have his trial completed before the first jury empanelled to try him.'"  *Id.* (alteration in original) (citation omitted) (first quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949); and then quoting *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982)).  "There is no specific standard by which to determine what facts and circumstances constitute a 'manifest necessity.'"  *Brandon v. Commonwealth*, 22 Va. App. 82, 90 (1996) (quoting *Turnbull v. Commonwealth*, 216 Va. 328, 335 (1975)).  Ultimately, "[t]he decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion."  *Lewis v. Commonwealth*, 269 Va. 209, 213 (2005).

Appellant argues that the trial court abused its discretion because no manifest necessity warranted a mistrial at his first trial, and therefore his retrial was barred by the prohibition against double jeopardy.  But although appellant opposed the trial court imposing the "grave remedy" of a mistrial, he never contended that there was no manifest necessity for it.  Nor did he move to dismiss the indictment on double jeopardy grounds before his retrial.  *See* Code § 19.2-266.2 (requiring a motion to dismiss on double jeopardy grounds to be "raised in writing, before trial").  In the absence of a proper objection and motion, the trial court was not alerted to,

- 8 -

nor given the opportunity to rule on, the issues of manifest necessity and double jeopardy appellant currently raises.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Although there are exceptions to Rule 5A:18, appellant has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Accordingly, Rule 5A:18 bars our consideration of these arguments on appeal.

B.  Limitation on Appellant's Opening Statement

Appellant contends that the trial court erred in prohibiting him from asking the jurors in his opening statement to "place themselves in the shoes of [appellant]" and mentioning that the castle doctrine applied.

Code § 19.2-265 provides that in a criminal trial, "counsel for the accused . . . shall have the right to make an opening statement of their case." But although there is this statutory right, "the trial court may exercise 'broad discretion in the supervision of opening statements.'" *Spencer v. Commonwealth*, 238 Va. 295, 311 (1989) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988)). "The purpose of the opening statement is merely to inform the jury of what counsel expects the evidence to be so that they may better understand the evidence." *Fields v. Commonwealth*, 2 Va. App. 300, 307 (1986). "An opening statement is not evidence," *Arrington v. Commonwealth*, 10 Va. App. 446, 448 (1990), and it is "not to be used for the purpose of arguing what may be the applicable law," *Lam v. Lam*, 212 Va. 758, 759 (1972).

Applying these standards, we find no abuse of the trial court's discretion in limiting appellant's opening statement. It was not appropriate for appellant, in his opening statement, to opine on what the applicable law would be at the close of all the evidence.[3] *See Lam*, 212 Va. at 759. We therefore do not disturb the trial court's pretrial ruling concerning the permissible scope of appellant's opening statement.

C. Jury Instructions

Appellant contends the trial court erred in refusing two of his proffered jury instructions and granting an instruction proffered by the Commonwealth.

"A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "[W]hile a defendant is entitled to have the jury instructed on his theory of the case, such an instruction must be supported by '[m]ore than a scintilla of evidence.'" *Mayberry v. Commonwealth*, 66 Va. App. 93, 101 (2016) (second alteration in original) (quoting *Eaton v. Commonwealth*, 240 Va. 236, 255 (1990)). "The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis." *Id.* (alteration in original) (quoting *Woolridge v. Commonwealth*, 29 Va. App. 339, 348 (1999)). "Upon review, the evidence must be viewed in the light most favorable to the proponent of the instruction." *Id.*

---

[3] And in any event, at the end of the evidence the trial court found that the castle doctrine did not apply because Rivera was a resident in appellant's home.

1. Refusal of Instruction A

The trial court granted Instruction 15, which stated:

>If you believe that the defendant:
>
>(1) Reasonably believed based on the attendant circumstances that Michelle Robb was free from fault in provoking the difficulty or fight; and
>
>(2) He reasonably feared, under the circumstances as they appeared to him, that she was in imminent danger of death or serious bodily harm; and
>
>(3) He used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect her from the perceived harm,
>
>then the killing was done in defense of another and you shall find the defendant not guilty.

Instead of Instruction 15, appellant proposed Instruction A, which stated that the first requirement of the defense was for the jury to find that he "reasonably believed that Michelle Robb was free from fault in provoking the fray, *even if she was not, in fact, free from fault.*" (Emphasis added). Appellant maintains that clarifying the irrelevance of Michelle's actual fault, rather than only his perception of it, was necessary to the jury's understanding of the defense.

We find no abuse of discretion in the trial court's decision not to grant appellant's proposed Instruction A in lieu of Instruction 15. Instruction 15 clearly stated that the focus of the defense of another was on the circumstances "as they appeared to" appellant, regardless of whether Michelle was actually at fault in the situation. As such, it clearly stated the law and covered the relevant issue of fault raised by the evidence. *Fahringer*, 70 Va. App. at 211. And while appellant contends that the proposed language in Instruction A is drawn from this Court's opinion in *Foster v. Commonwealth*, 13 Va. App. 380, 386 (1991), "Virginia courts have often cautioned against lifting the 'language of a specific opinion' for a jury instruction given that an appellate opinion 'is meant to provide a rationale for a decision - and may not translate

- 11 -

immutably into jury instructions.'" *Mason v. Commonwealth*, 49 Va. App. 39, 49 (2006) (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 753 (2004)).

### 2. Refusal of Instruction B

The trial court also refused appellant's proposed Instruction B, which stated, "[i]f there is more than a scintilla of evidence of self-defense or defense of others, either from defendant's own case-in-chief or from the prosecution's, then you may consider that evidence sufficient to create a reasonable doubt as to the defendant's guilt and to find the defendant not guilty." The trial court found that Instruction B was unnecessary in light of the granted instructions concerning self-defense and defense of others, as well as Instruction 1, defining the presumption of innocence, the Commonwealth's burden to prove guilt beyond a reasonable doubt, and that appellant had no burden to produce evidence.

"When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)). And "[i]f a court properly instructs the jury that '[t]here is no burden on the defendant to produce any evidence,' it is not error to refuse an 'additional instruction on the burden of proving affirmative defenses.'" *Taylor*, 77 Va. App. at 168 (second alteration in original) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 673-74 (2000)).

We agree with the trial court's conclusion that the jury was instructed appropriately about reasonable doubt and the burden of proof through the granted instructions. Consequently, the addition of Instruction B would have only proved confusing to the jurors. Therefore, we find no abuse of discretion in the trial court's ruling.

### 3. Instruction 7

Over appellant's objection, the trial court granted Instruction 7, the model jury instruction stating, "[y]ou may consider the character of the defendant when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence." Appellant contends that "he never put his character in issue" and that "[s]ince there was not even a scintilla of evidence to support th[e] character instruction," the trial court abused its discretion by giving it to the jury. The Commonwealth argues that the notes discovered in appellant's notebook, including those indicating that appellant contemplated planting illegal drugs in Michelle's car, was character evidence.

The character instruction was a correct statement of the law, but such an instruction is generally applicable only when "the *defendant* has offered character evidence." *See* Comment, Model Jury Instrs.—Crim. No. 2.200 (emphasis added); *Robinson v. Commonwealth*, 118 Va. 785, 790 (1916) ("The weight of authority is to the effect that character is not in issue unless put there by the defendant."); *cf. Poole v. Commonwealth*, 211 Va. 262, 265 (1970) (noting that "the prosecution may introduce evidence of a prior crime to attack a defendant's character if he has attempted to show his good character or has testified in his own behalf and opened the door to impeachment"). Here, appellant offered no character evidence and did not put his character in issue. Accordingly, it was error for the trial court to grant Instruction 7.

"[U]nder Code § 8.01-678, a harmless error review is required in all cases, unless otherwise provided by another statute." *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022). When the propriety of a jury instruction is challenged, the non-constitutional standard for harmless error applies. *See Graves v. Commonwealth*, 65 Va. App. 702, 711 (2016). A non-constitutional error is harmless when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been

- 13 -

reached." Code § 8.01-678. The error is harmless "if the reviewing court can be sure that the error did not influence the [fact finder] and only had a slight effect." *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010). "To reach this conclusion, the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Kilpatrick*, 301 Va. at 217.

Here, because we conclude in Part D below that the record overwhelmingly established appellant's guilt, we conclude that the trial court's error in granting Instruction 7 could not have influenced the jury or had more than slight effect. Therefore, that error was harmless.

D. Sufficiency of the Evidence

Appellant argues that the trial court erred in denying his motion to strike. Although he does not dispute that he shot Rivera intentionally, appellant contends the evidence did not prove that he shot her in the heat of passion upon reasonable provocation. Alternatively, appellant maintains that the evidence proved that he acted in self-defense or in the defense of another.

"Where the sufficiency of the evidence is challenged, this Court affords the highest degree of appellate deference to the facts as decided by the initial factfinder. . . . A conviction will not be disturbed on appeal unless the judgment is plainly wrong or without evidence to support it." *Durham v. Commonwealth*, 303 Va. 310, 326 (2024). Additionally, "this Court will not replace the ultimate judgment of the factfinder with its own." *Id.* "'The Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' but rather 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at

the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[I]n Virginia, criminal homicide is divided into two categories: murder and manslaughter. 'Murder' is the unlawful killing of another with malice. 'Manslaughter, on the other hand, is the unlawful killing of another without malice.'" *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "Voluntary manslaughter is the unlawful killing of another, 'committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation.'" *Diaz v. Commonwealth*, 80 Va. App. 286, 314 ( 2024) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)).

Here, the trial court instructed the jury that to prove the crime of voluntary manslaughter, the Commonwealth was required to prove that appellant intentionally killed Rivera and that the killing "was committed while in the sudden heat of passion upon reasonable provocation, or in mutual combat." Accordingly, to determine appellant's culpability for the killing, the jury was required to determine appellant's state of mind at the time of the shooting. *See, e.g.*, *Dandridge*, 72 Va. App. at 681-82 (explaining that a malicious homicide is murder and an intentional killing done without malice in the heat of passion is voluntary manslaughter). Consistent with determining state of mind, the jury also had to decide whether appellant acted out of fear for his safety or that of Michelle. *See, e.g.*, *Hines v. Commonwealth*, 292 Va. 674, 679 (2016).

If the jury determined that appellant shot Rivera out of fear, it was next tasked with deciding whether appellant acted appropriately in self-defense or the defense of another. There are specific requirements to meet these affirmative defenses. To support a claim of self-defense, an accused must show that "he reasonably feared death or serious bodily harm at the hands of his

victim." *Id.* The defense also requires a finding that the degree of force used was "necessary to repel the aggressor." *Id.* (regarding a self-defense claim raised by a defendant attacked in his own home). In addition, someone claiming self-defense must establish "'that he was in imminent danger of harm' by showing 'an overt act or other circumstance that afford[ed] an immediate threat to safety.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Id.* (alterations in original) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded," is insufficient to support a claim of self-defense. *Id.* (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)). Finally, "[w]hether an accused prove[d] circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Meade v. Commonwealth*, 74 Va. App. 796, 807 (2022) (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016)).

Contrary to appellant's contention, the jury was not required to accept his assertion that he shot Rivera in self-defense. Even if Rivera's angry presence inside the home caused appellant to be fearful, he had retreated to the relative safety of the bedroom and remained there behind a locked door. Rivera was not armed with a weapon when appellant saw her at the front door. Using his phone, appellant disarmed the security alarm, which would have triggered an alert to the police. And nothing prevented appellant from calling the police and reporting the domestic dispute. Instead, appellant armed himself with a firearm. Prepared to confront Rivera, appellant then unlocked and opened the bedroom door. Only then could appellant have realized that Rivera had a knife.

There was no evidence that once the door opened Rivera threatened or charged at appellant with a knife. Rather, according to appellant, Rivera appeared intent on confronting Michelle, and "bypassed" him to move toward the bathroom. Despite the absence of an overt threat to cause appellant serious harm, he used deadly force against her by shooting her in the chest. Under these facts and circumstances, a jury reasonably could have concluded that the degree of force appellant used was not necessary to repel Rivera and rejected his claim of self-defense.

Similar to self-defense, "[o]ne must reasonably apprehend death or serious bodily harm to another before he or she is privileged to use force in defense of the other person." *Foster*, 13 Va. App. at 385-86. But "[t]he amount of force which may be used must be reasonable in relation to the harm threatened." *Id.* at 386. In addition, "one may avail himself or herself of the defense only where he or she reasonably believes, based on the attendant circumstances, that the person defended is without fault in provoking the fray." *Id.*

At the time of the shooting, Michelle had retreated from the bedroom to the bathroom. Though Rivera moved past appellant toward the bathroom after he opened the bedroom door, Rivera had made no verbal threat of violence to Michelle. The trajectory of the bullet that struck Rivera showed that when appellant fired the shot at Rivera from the bedroom, she was facing him in the bedroom, not Michelle. And Michelle never saw a knife in Rivera's hand. Considering the totality of these facts, a reasonable jury could conclude that appellant was not privileged to use deadly force against Rivera in defense of Michelle.

Finally, we must determine whether the record supports the jury's finding that appellant shot Rivera in the heat of passion upon sudden provocation. "Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason. [It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious

- 17 -

reflection." *Woods*, 66 Va. App. at 131 (alterations in original) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "The law requires the simultaneous occurrence of both reasonable provocation and passion." *Graham*, 31 Va. App. at 671. And "[m]alice and heat of passion cannot coexist." *Woods*, 66 Va. App. at 131 (quoting *Turner v. Commonwealth*, 23 Va. App. 270, 275 (1996), *aff'd*, 255 Va. 1 (1997)).

Of further relevance in this case, "[i]t is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (second alteration in original) (quoting *Pijor*, 294 Va. at 512). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, as the Commonwealth posits, appellant "faced a situation of his own making that would have enraged many: his live-in girlfriend had caught him cheating on her" and was intent on confronting him about his conduct. Appellant, not expecting Rivera home that evening, had disabled outdoor security cameras to prevent Rivera from discovering his infidelity to her when Michelle arrived at the house. But Rivera returned home in the middle of the night, while appellant and Michelle were asleep, to address the situation. Recognizing that Rivera knew of Michelle's presence, appellant safely retreated to the locked bedroom. Rivera banged on the door and screamed, demanding to see appellant and Michelle. While appellant could have had no knowledge whether Rivera had obtained a weapon after her arrival at the house, he armed himself with a gun. He opened the door and then shot Rivera in the chest, killing her. From

- 18 -

these facts and the surrounding circumstances, a reasonable jury could find that appellant shot Rivera in the heat of passion and upon sudden provocation and that he was guilty of voluntary manslaughter beyond a reasonable doubt. Accordingly, the trial court did not err in denying appellant's motion to strike.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*